UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ROBERT H. YOE, III, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:15-cv-3-SKL |
| | ) | |
| v. | ) | |
| | ) | |
| CRESCENT SOCK COMPANY, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is a motion for summary judgment and supporting memorandum filed by

Defendants Crescent Sock Company ("Crescent"), Omni Wool, LLC ("Omni Wool"), Catherine

Burn Allen ("Allen"), and Sandra Burn Boyd ("Boyd," and collectively, "Defendants") on

September 15, 2017 [Docs. 320 and 325[1]]. Defendants also filed a statement of undisputed

material facts. [Doc. 323[2]]. Plaintiffs Robert H. Yoe, III ("Yoe"), and Yoe Enterprises,

Incorporated ("YEI," and collectively, "Plaintiffs"), filed a response to the motion [Doc. 382], and

---

[1] Doc. 325 is the sealed version of Defendants' brief in support of its motion for summary judgment. Doc. 321 is the unsealed, redacted version. The Court will cite to the sealed version, but some of the exhibits are only attached to the unsealed version.

In addition, the motion for summary judgment is titled, "Crescent's Motion for Summary Judgment," but all Defendants join in the Motion. [*See* Doc. 320 at Page ID # 6011]. Therefore, the Court will refer to "Defendants" or, where necessary, will identify an individual defendant by name. The Court will also generally refer to pleadings as being filed by "Plaintiffs" even if only one Plaintiff is identified in the title of the pleading. Where necessary, the Court will refer to each Plaintiff individually.

[2] The Court notes that Plaintiffs filed a notice of objection to Defendants' statement of undisputed material facts, on the basis that the document "is contemplated by neither the Federal Rules of Civil Procedure nor the Local Rules of this Court." [Doc. 345 at Page ID # 8391]. Defendants' facts are also incorporated into their memorandum in support of their motion for summary judgment, and therefore it is unnecessary to consider the separately filed statement.

Defendants filed a reply [Doc. 394]. Also before the Court is a motion for partial summary judgment and supporting memorandum filed by Plaintiffs [Docs. 322 and 326]. Defendants filed a response [Doc. 377], and Plaintiffs filed a reply [Doc. 395]. These matters are now ripe.

For the reasons stated below, Defendants' motion [Doc. 320] will be **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' motion for partial summary judgment [Doc. 322] will be **DENIED**.

## I.    BACKGROUND

This case has a complicated factual and procedural background in both state and federal court, some of which has been detailed in prior orders of the Court. Given that this case already has in excess of 450 docket entries—constituting more than 15,500 pages—in the federal case alone, it is impossible to fully summarize that background here. However, the Court will discuss the factual and procedural background to provide context and to the extent needed to explain the Court's rulings on the pending motions for summary judgment.

### A.    The Parties

This case arises out of a soured business relationship between Defendants and Plaintiffs. Defendant Crescent is a sock manufacturing company. Plaintiff Yoe was hired in 2000 to serve as Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO") of Crescent. Defendants Allen and Boyd[3] are part owners of Crescent, and have worked there throughout their adult lives.[4]

---

[3] As the Tennessee Court of Appeals noted in a decision in the related state-court action, Defendants Allen and Boyd "are members of the Burn family, which has owned and controlled Crescent since its inception in the early 1900s. Allen was Vice President and Treasurer, and assumed the role of President and CEO upon the termination of Yoe. Boyd was Corporate Secretary and became Chief Operating Officer after Yoe's termination." *See Crescent Sock Co. v. Yoe*, No. E2015-00948-COA-R3-CV, 2016 WL 3619358, at *2 n.2 (Tenn. Ct. App. May 25, 2016).

[4] Defendant Omni Wool (the most recently added defendant), is a company that appears to be

Yoe owns (and at all relevant times owned) Plaintiff YEI, which holds intellectual property rights to certain sock brands manufactured by Crescent during Yoe's employment at Crescent. At issue in this case are the FITS and Game Knits brand socks that Yoe developed while at Crescent. In September 2012, Crescent and YEI entered into an agreement[5] (the "Business Agreement") which memorialized prior agreements and the parties' business relationship as follows:

(1) "Any and all new brands, and other intellectual property relating to such new brands, that are developed, registered, trademarked, invented, started, conceived or designed by Crescent, Yoe and/or YEI from January 1, 2009 through the termination of Yoe's employment with Crescent ('the Intellectual Property') shall be 100% owned by YEI";

(2) Crescent will pay royalty payments to YEI relative to the FITS brand at a rate of $1.00 in 2013 and 2014, and beginning in 2015 and each year thereafter, "5% of Net Sales"; and

(3) With regard to licensing of the YEI-owned brands, Crescent and YEI agreed that, "[o]n or before 1 year after the execution of [the Business Agreement], YEI and Crescent will enter into an agreement for licensing/manufacturing/sourcing relative to the Intellectual Property which includes terms and conditions similar to the LIG contract" and which incorporates the royalty payment schedule.

[*See* Business Agreement, Doc. 24-3].

**B. State Court Litigation**

On September 4, 2013, Yoe and five other Crescent employees who worked with the FITS brand were fired without cause. The day before, Crescent had filed a lawsuit in the McMinn

---

owned by or affiliated with Defendants. As explained in greater detail below, Plaintiffs allege that Omni Wool and/or Crescent have wrongfully used YEI's intellectual property (specifically related to FITS socks) to create and sell socks under the brand names "Omni Wool Tactical" and "Hiwassee Trading Company." [Doc. 201 at Page ID # 2894-97].

[5] Yoe's employment contracts with Crescent are at issue in this case only to the extent that they discuss the intellectual property rights also at issue in the Business Agreement. The Business Agreement itself provides that it is intended to "memorialize prior business agreements concerning branding and intellectual property in a single agreement." [Doc. 24-3]. The Business Agreement appears to be the only agreement between Crescent and YEI. The Court's discussion will therefore focus on the Business Agreement.

County, Tennessee Chancery Court ("Chancery Court Case"), seeking a declaration that certain employment contracts between Yoe and Crescent (which provided for, among other things, a $2 million severance payment to Yoe upon termination without cause) and the Business Agreement were void and unenforceable. Crescent alleged that the Business Agreement was "unfair, unsupported by consideration, usurp[ed] corporate opportunity, and constitute[d] a breach of fiduciary duty by Mr. Yoe." [Doc. 24-4 at Page ID # 117].

Yoe filed an answer in the Chancery Court Case on September 19, 2013, noting that YEI was the real party in interest to the Business Agreement [*id.* at Page ID # 157-60]. Yoe and YEI[6] alleged that "[i]n 2009, in order to induce Mr. Yoe to continue with Crescent, Crescent granted to Yoe Enterprises the ownership of the intellectual property rights of all new brands. The grant of ownership rights in the intellectual property was memorialized in an amendment to the [employment contracts] and subsequently [the] Business Agreement dated September 4, 2012 between Crescent and Yoe Enterprises." [*Id.* at Page ID # 165]. Yoe and YEI asserted counterclaims for breach of the Business Agreement and "Patent and Intellectual Property Infringement" against Crescent, claiming that:

> [Count III – breach of the Business Agreement]
>
> 33. Yoe Enterprises is the party to the Business Agreement dated September 4, 2012 by and among Yoe Enterprises and Crescent whereby Yoe Enterprises is named the 100% owner of all intellectual property and new brands developed by Mr. Yoe and/or Yoe Enterprises, Inc. from January 1, 2009. Crescent is licensed to manufacture the intellectual property owned by Yoe Enterprises, including the FITS®, . . . and Game Knits® brands in addition to other brands, and Crescent pays certain royalties to Yoe Enterprises relative to the sales of these brands.
>
> 34. Pursuant to the Business Agreement with Yoe Enterprises, Crescent has been marketing and manufacturing the FITS® brand products and

---

[6] The Court refers to "Yoe and YEI," rather than "Plaintiffs" here, because Yoe and YEI were the defendants in the state court action.

reaping significant benefits in terms of sales and gaining customers due to the superiority of the FITS® brand products. Crescent now seeks to void the Business Agreement in violation of the terms of the parties' agreement.

35.     Crescent's actions constitute bad faith and a breach of the Business Agreement.

36.     As a direct and proximate cause of Crescent's bad faith and breach of the Business Agreement, Yoe Enterprises has sustained damages in an amount to be determined at trial.

[Count IV – patent and intellectual property right infringement]

. . . .

38.     Pursuant to the [Business Agreement] with Yoe Enterprises, the owner of the FITS® brand and other brands, Crescent has the non-exclusive temporary license and right to market, manufacture and sell FITS® brand products and the other products. However, such license requires that the FITS® brand products be manufactured in strict accordance with the specific technology, specifications and patents for FITS® brand products.

39.     Upon information and belief, Crescent is continuing to manufacture socks under the FITS® brand name but may change the manner in which the socks are manufactured, including but not limited to using a different yarn, in violation of the specific technology, specifications and patents governing the FITS® brand.

40.     A deviation by Crescent from the specifications, proprietary manufacturing processes and patents governing the FITS® brand constitutes an infringement on the intellectual property rights and patent rights of Yoe Enterprises.

41.     Crescent's acts of infringement have been and continue to be willful.

42.     The unauthorized and infringing use by Crescent of Yoe Enterprises' patented FITS® brand product has caused and will cause irreparable harm, damage and injury to Yoe Enterprises. In addition, Crescent has unlawfully and wrongfully derived and will continue to derive income from its infringing acts.

[Doc. 24-4 at Page ID # 168-69]. Yoe and YEI also asserted counterclaims against Crescent for

breach of Yoe's employment contract for failure to pay his "post-termination compensation," and

quantum meruit/unjust enrichment [Doc. 24-4 at Page ID # 162-67]. Yoe and YEI also asserted

third party claims against Boyd and Allen for inducement of breach of Yoe's employment contracts, inducement of breach of the Business Agreement, and negligent and/or intentional misrepresentation [*id.* at Page ID # 170-75].

On or around the same time that Yoe and YEI filed their answer, counterclaims, and third-party claims in the Chancery Court Case, they obtained an injunction that provides, in relevant part:

> It appearing to the Court that the parties to this cause have agreed on the terms of the Temporary Injunction, that because of the uniqueness of the brand of sock known as FITS®, and because the value of this brand of sock may be compromised and/or lost if this injunction is not granted, it is hereby:
>
> **ORDERED, ADJUDGED AND DECREED** that:
>
> 1.     Crescent Sock Company, its agents, employees, successors, officers and directors, and all other persons in concert or participation with such entities, are enjoined from marketing the FITS® brand products . . . unless each and every product has been manufactured using the proper materials, proper packaging, proper technology for manufacturing FITS®, proper manufacturing processes, and using all of the same specifications required to manufacture FITS® that were in place as of August 15, 2013 and using all of the same specifications as required by the patents held by Yoe Enterprises.
>
> 2.     Crescent Sock Company, its agents, employees, successors, attorneys, officers and directors and all other entities in active concert or participation with such entities, are hereby enjoined and required to fulfill any and all orders for FITS® and Jacks® products in a timely and appropriate manner, all as required by orders for such products, to the extent that said orders do not exceed the operating capacity of the Company as it existed on September 4, 2013, using the correct and proper materials, packaging, technology, manufacturing specifications and specifications as set forth above.  Further, the Company shall use its best faith efforts to maintain adequate levels of inventory and yarn on order and on hand to fulfill such orders. . . . .

[Doc. 24-7 at Page ID # 272-73].

Crescent filed an "amended and restated complaint" as well as an answer to Yoe and YEI's counterclaims on December 31, 2013; Boyd and Allen also filed answers to the third-party claims [Doc. 24-4 at Page ID # 189-204]. Crescent admitted that there were outstanding orders for FITS socks, and contended that it had "properly manufactured and marketed the FITS brand at great cost . . . without contribution from [Yoe and YEI]." [*Id.* at Page ID # 202]. Crescent continued to claim that the Business Agreement was not valid [*id.* at Page ID # 201].

On January 10, 2014, Yoe and YEI filed an amended counterclaim and third-party complaint in the Chancery Court Case [Doc. 24-4 at Page ID # 216-48]. In this pleading, they reiterated their prior claims and allegations, and additionally alleged:

> 18. Pursuant to the contractual agreements between Mr. Yoe and Crescent and Yoe Enterprises and Crescent, Crescent specifically agreed to bear the ongoing costs associated with the new brands, including FITS®, Jacks®, and Game Knits® as well as other brands, and manufacture the product. As to the FITS®, Jacks®, and Game Knits® brands, Yoe Enterprises would grant Crescent a non-exclusive temporary license to market and manufacture the brands and Crescent would pay royalties to Yoe Enterprises . . . with other conditions similar to the LIG 'Life is Good' contract.
> . . . .
>
> 21. Upon information and belief, Crescent intends to substitute yarn outside of the specifications in the manufacture of the FITS® sock either to satisfy their own needs or in order to reduce costs, among other changes. However, the use of a substitute yarn other than that required in the specifications, specific technology and manufacturing process and patents for FITS® socks will compromise the integrity of the FITS® socks and the FITS® brand and will result in irreparable harm to Yoe Enterprises as owner of the FITS® brand.
>
> 22. Upon information and belief, since terminating Mr. Yoe, Crescent has eliminated certain SKUs of FITS® product[s], changed the names of certain FITS® products, changed the packaging of products, ceased research and development of the FITS® products, is failing to use pre-existing marketing practices including but not limited to preseason terms and conditions, sales collateral, and other sales support, is failing to maintain the proper levels of FITS® product[s] in the retail stores and proper inventory levels at Crescent, and is representing that Crescent is the

owner of the FITS® brand.  Each of these actions is causing irreparable damages to the FITS® bran[d] to Yoe Enterprises as owner of the FITS® brand and to Mr. Yoe as the CEO of Yoe Enterprises.

[Doc. 24-4 at Page ID # 220-21].  Yoe and YEI added claims against Crescent specifically for breach of the "license agreement," misfeasance, negligence, and "misappropriation/conversion of FITS® brand" relating to the changes and misrepresentations Crescent allegedly made with regard to the FITS® socks [*id.* at Page ID # 223-27].  Yoe and YEI also alleged that "Crescent owes a duty" to Yoe and YEI "to perform the obligations under the [employment contract] and Business Agreement with due care," and to "manufacture[], market and sell the FITS® product." [*id.* at Page ID # 227].  Against the third party defendants Boyd and Allen, Yoe and YEI added claims for intentional interference with business relationship, and defamation specifically as to Yoe [*id.* at Page ID # 234].  Shortly thereafter, Yoe and YEI filed an amended answer to Crescent's amended and restated complaint [*id.* at Page ID # 249-52].

In their answer to the amended counterclaim and third party complaint, Crescent, Boyd, and Allen generally denied Yoe and YEI's claims, but admitted that "on limited occasions, very small SKUs of FITS product have not been run where doing so would cost more than the value of the SKU itself," while also contending that "such action is not unusual, is good business practice, and would occur on occasion while Yoe was CEO of [Crescent] with Yoe's approval." [Doc. 24-4 at Page ID # 208].

In May 2014, Yoe and YEI voluntarily nonsuited a number of claims from their January 2014 amended countercomplaint in the Chancery Court Case, including their counterclaims for breach of the license agreement, patent and intellectual property infringement, misfeasance, negligence, misappropriation/conversion of the FITS® brand, and duty to perform with due care [Doc. 24-5].  At that point, the only remaining counterclaims were for breach of contract and

quantum meruit relating to Mr. Yoe's employment contract, and the counterclaim related to Crescent's alleged breach of the Business Agreement with YEI. Notably, in addition to maintaining their claim for breach of the Business Agreement in the Chancery Court Case, they retained the paragraph containing the allegations that Crescent was making certain changes to the FITS® socks and that Crescent is "representing that [it] is the owner of the FITS® brand." [*see* ¶ 22 quoted above, Doc. 24-4 at Page ID # 221]. The injunction also remained in place.

Yoe and YEI also voluntarily nonsuited their defamation claim against Boyd and Allen from the third-party complaint [Doc. 24-5]. Later, in November 2014, they voluntarily nonsuited more claims from the amended third-party complaint in the Chancery Court Case, including their inducement of breach of contract claims relating to Yoe's employment contracts and the Business Agreement, and their intentional interference with business relationship claim [Doc. 24-6]. The only remaining third-party claims in the Chancery Court Case at that point were for negligent and/or intentional misrepresentation, which related specifically to Boyd and Allen's alleged misrepresentations concerning their authority to bind Crescent to Yoe's employment contracts and the Business Agreement [*see* Doc. 24-6; Doc. 24-4 at Page ID #233].

Following a seven-day trial, the court entered an order on December 29, 2014 in the Chancery Court Case [Doc. 382-3]. The court concluded that the employment contracts and the Business Agreements were valid agreements and that Yoe was entitled to the $2 million severance payment. The court found that YEI obtained two patents related to FITS, and that Yoe "obtained other intellectual property rights associated with the FITS, Jacks and Gameknits brands, including trademark rights, domain rights and copyrights as to color, appearance, technology, packaging, and knitting machine specifications," which were "in the name of YEI." [Doc. 382-3 at Page ID # 11088].

Concerning the Business Agreement, the court found:

> In 2012 the parties were also having discussions as to the payment of royalties and licensing of the brand. The result of these discussions was the Business Agreement dated September 4, 2012, which further memorialized the prior agreements relating to the ownership of the new brands by YEI and the license to Crescent of the right to manufacture the brands.

[*Id.* at Page ID # 11094]. The court made other findings relevant to the "license agreement" between Crescent and YEI, including that it "requires no minimum payments, nor required marketing expenses," in contrast with other licensing agreements under which Crescent had previously operated [*id.* at Page ID # 11101]. The court further found that "Crescent has the exclusive ability and opportunity to manufacture the FITS brand socks pursuant to the terms of the agreement." [*Id.*]. Finally, the Court concluded the following:

> Did Crescent breach the April 14, 2009 Agreement with Mr. Yoe and the September 4, 2013 Business Agreement with YEI? The court finds that YEI is the owner of the respected brands in question, and by Crescent now claiming ownership of the brands, Crescent has in fact breached the contract agreement and/or the terms of the contract agreement.

[*Id.* at Page ID # 11115].

The parties filed a number of post-judgment motions in the Chancery Court Case. On January 22, 2015, Crescent, Boyd and Allen[7] filed a motion to alter or amend the court's decision, in which they pointed out:

> 4.    There is an Agreed Order for an injunction in this case which is possibly still in effect to some degree. The judgment of December 29, 2014, did not discuss the rights and obligations of the parties under the injunction in this case or whether such injunction is still valid. As such, this issue remains unresolved.
> . . . .

---

[7] The Court refers to Defendants by their names here to avoid confusion, because they were the plaintiffs/counter-defendants in the Chancery Court Case.

8. Further, while the judgment holds that the "Business Agreement" is valid, and represents a purported licensing agreement, the judgment does not declare various essential terms of the agreement between the parties, including the duration of the agreement and the parties' rights and duties under the agreement. As such, the issue of the parties' rights and liabilities under the licensing agreement are unresolved.

[Doc. 24-9 at Page ID # 332-33]. Crescent, Boyd and Allen requested the court to "either adjudicate all the issues between the parties, or in the alternative, . . . remove the designation of the judgment as a 'Final Order' . . . ." [*Id.* at Page ID # 337].

On February 12, 2015, Yoe and YEI filed a motion for an extension of the temporary injunction that required Crescent to continue properly manufacturing FITS [Doc. 24-10]. In that motion, Yoe and YEI argued, "it is imperative that the injunction remain in place and Crescent continue to manufacture the FITS brand in accordance with the terms of the current injunction until twelve months after the appeals process has been exhausted and a final order entered in the case." [*Id.* at Page ID # 381-82]. Yoe and YEI also moved to alter or amend the state court judgment; they argued the court erred in concluding that Crescent had an "exclusive" license to manufacture FITS socks. *See Crescent Sock Co. v. Yoe*, No. E2015-00948-COA-R3-CV, 2016 WL 3619358, at *2 (Tenn. Ct. App. May 25, 2016).

On April 23, 2015, the court entered an "Order Regarding Post Trial Motions," which states that the parties agreed to continue the injunction, but does not set forth a specific end date for the injunction [Doc. 56-1]. With regard to Crescent, Boyd and Allen's concerns about the Business Agreement, the court held:

The court finds, and noted at the hearing, that the trial of this case was tried over a period of several days, and the movant's attorneys had every opportunity to plead and to argue any issue pertaining to the licensing agreement that they chose to argue. However, they chose not to argue concerning the licensing agreement, and did not request any declaration from this court concerning the various essential terms of the agreement between the parties. Furthermore, this court requested that each of the parties set forth a statement of the issues along with their proposed

> findings of fact and conclusions of law at the conclusion of the trial. Neither side chose to mention and/or argue anything pertaining to the licensing agreement nor its various terms.

[Doc. 56-1 at Page ID # 628]. The court granted Yoe and YEI's motion to amend, finding that, indeed, Crescent "does not have the exclusive right to manufacture the brands owned by [YEI]," due to the fact that Crescent had terminated Yoe without cause [*id.* at Page ID # 631]. Finally, the court awarded attorney fees, discretionary expenses, and prevailing party expenses to Yoe and YEI, collectively, in the amount of $765,880.77 [*id.* at Page ID # 627].

Crescent appealed portions of the December 29, 2014 order, as well as the court's decision that Crescent's license became non-exclusive upon Yoe's termination and the award of attorney fees and expenses to YEI and Yoe. In a May 2016 decision, the Tennessee Court of Appeals affirmed the chancery court in large part, reversing and remanding only on the issue of attorney fees and expenses awarded to YEI. The court of appeals found that, while Yoe was entitled to these fees and costs under the applicable agreements, YEI was not; the court of appeals therefore ordered the chancery court to subtract the portion of the award attributable to YEI. *Crescent Sock Co.*, 2016 WL 3619358, at *9.

On August 23, 2017, on remand, the chancery court entered a final judgment, indicating that the parties had settled the issue of attorney fees and costs payable to Yoe and YEI, and that Crescent, Boyd and Allen had satisfied the $2.9 million judgment [Doc. 300-4]. The entry of judgment further provides that "the Clerk shall close the case without prejudice to [Yoe and YEI] to reopen the case to enforce the non-monetary portion of the judgment." [*Id.* at Page ID # 5681-82].

### C.    Federal Court litigation

As the trial proceedings in the Chancery Court Case drew to a close, the proceedings before this Court erupted.  Since the filing of their original complaint on January 6, 2015, Plaintiffs have amended their complaint three times, parties and claims have been added and dropped, three rounds of motions to dismiss have been filed, and several rounds of discovery have been completed, culminating in the instant motions for summary judgment.

Crescent continued manufacturing and selling FITS socks until February 28, 2016; shortly thereafter, Crescent began producing and selling Omni Wool Tactical socks, which Plaintiffs essentially claim is a copy of the FITS sock,[8] and which Plaintiffs claim Defendants unfairly began selling to former FITS customers as the new FITS sock [*see* Doc. 382 at Page ID # 11010; *see also* Doc. 321-1 (Allen Declaration)].  According to Defendant Allen's sworn declaration, Crescent last sold Game Knits socks on July 20, 2015 [Doc. 321-1].

As stated in their motion, Defendants assert the following grounds for summary judgment:

> (A) All YEI's claims save those involving Omni Wool Tactical ("OWT") socks are *res judicata* because they were or could have been brought in the prior suit between the parties.  (Counts I, II, V, VII, VIII, X, XI, and XIII.)

> (B) In addition, and in the alternative, YEI's trademark claims fail under the canons of contract interpretation that negate its attempt to write an approval clause into the parties' Business Agreement.  (Counts I, II, V, VIII, X, and XI.)

> (C) In addition, and in the second alternative, YEI's claims related to the GAME KNITS trademark fail for abandonment.  (Counts I, II, V, VIII, and X.)

> (D) YEI's intentional interference with prospective business relations claim fails for lack of record evidence of improper means.  (Count XV.)

---

[8] Plaintiffs also claim the Hiwassee Trading Company brand socks incorporate misappropriated intellectual property relating to FITS and owned by YEI [*see* Doc. 201].

(E) YEI's trade secret misappropriation and unfair competition claim fails for lack of proof of unfair competition. (Count XVI.)

(F) Most of YEI's claims for equitable relief are moot.

(G) YEI's speculative claims for lost profits and trade secrets damages fail for lack of record evidence.

[Doc. 320].[9]

Plaintiffs raise a number of arguments in response [Doc. 382] to Defendants' motion, which the Court will discuss as it addresses each issue in turn below.[10] Plaintiffs also move for

---

[9] Defendants' motion is supported by a memorandum [Doc. 325]; a statement of material facts [Doc. 323]; a declaration of Defendant Allen [Doc. 321-1]; excerpts from the transcript of Yoe's deposition [Doc. 321-2]; excerpts from the transcript of Allen's deposition [Doc. 325-1]; excerpts from the transcript of the deposition of Luke Eldridge, an employee of YEI [Doc. 325-2]; excerpts from the transcript of the deposition of D. Michael Costello, one of Plaintiffs' expert witnesses [Doc. 325-3], excerpts from the transcript of the deposition of Peter Bellman, one of Defendants' expert witnesses [Doc. 325-4]; the rebuttal report of Dr. Erich Joachimsthaler, one of Defendants' expert witnesses [Doc. 325-5]; a picture of the Omni Wool Tactical brand socks [Doc. 321-8]; YEI's answers to Omni Wool's first set of interrogatories [Doc. 321-9]; excerpts from the deposition transcript of Heather Lingerfelt, an employee of Crescent [Doc. 321-10]; a picture from YEI's website [Doc. 321-11]; YEI's patent for FITS socks [Doc. 321-12]; additional excerpts from the transcript of the deposition of Yoe [Doc. 325-6]; excerpts from the deposition transcript of Oscar Nardi, one of YEI's expert witnesses [Doc. 325-7]; and excerpts from the transcript of the deposition of Mitchell Beckler, another one of YEI's expert witnesses [Doc. 325-8].

[10] Plaintiffs rely on the following exhibits in support of their response: the original complaint filed in the Chancery Court Case [doc. 382-1]; the May and October 2014 orders from the Chancery Court Case granting Yoe and YEI's voluntary nonsuit of a number of the counterclaims and third-party claims [Doc. 382-2]; the December 2014 order from the Chancery Court Case [Doc. 382-3]; an excerpt from the transcript of the deposition of Boyd [Doc. 382-4]; the Tennessee Court of Appeals docketing statement for the appeal of the Chancery Court Case decision [Doc. 382-5]; an excerpt from the transcript of the deposition of Yoe [Doc. 382-6]; an email chain from February 2016 concerning Omni Wool and FITS socks [Doc. 382-7]; an email chain from March 2016 concerning Omni Wool and FITS socks [Doc. 382-8]; an email chain from February 2016 cancelling orders [Doc. 382-9]; an email chain from August 2016 concerning Omni Wool and FITS socks [Doc. 382-10]; an email chain concerning "rebranding" of Crescent products [Doc. 382-11]; a May 2016 email chain between Crescent and a military customer concerning sock orders [Doc. 383]; excerpts from the transcript of the deposition of Thomas Walden, one of Crescent's witnesses [Doc. 382-13]; and a November 2014 email chain between Crescent representatives and military sock buyers [Doc. 382-14].

partial summary judgment on their claims relating to Crescent's liability for infringing the FITS trademark, arguing that the undisputed material facts show that Crescent sold FITS-marked products that YEI did not approve, and that "such conduct constitutes trademark infringement." [Doc. 322].[11]

In response, Defendants argue that they were operating under a license at all times, and therefore cannot be liable for trademark infringement; they also reiterate their argument that Plaintiffs' claims relating to the FITS trademark are barred by the doctrine of res judicata [Doc. 377].[12]

## II. STANDARD OF REVIEW

Summary judgment is mandatory where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome"

---

[11] Plaintiffs' motion is supported by a memorandum [Doc. 326]; the December 2014 order from the Chancery Court Case [Doc. 326-1]; Yoe's 2007 employment contract [Doc. 326-2]; excerpts from the transcript of the deposition of Heather Lingerfelt, an employee of Crescent [Doc. 326-3]; a declaration from Yoe [Doc. 326-4]; the Business Agreement [Doc. 326-5]; excerpts from the transcript of the deposition of Allen [Doc. 326-6]; a copy of the license agreement between Crescent and the Life is Good company [Doc. 326-7]; excerpts from the transcript of the deposition of Boyd [Doc. 326-8]; the original complaint filed in the Chancery Court Case [Doc. 326-9]; Yoe and YEI's January 2014 amended counterclaim and third party complaint in the Chancery Court Case [Doc. 326-10]; Yoe and YEI's motion for issuance of a temporary injunction filed in the Chancery Court Case [Doc. 326-11]; an affidavit filed in support of the motion for temporary injunction by Yoe in the Chancery Court Case [Doc. 326-12]; the agreed order granting the temporary injunction in the Chancery Court Case [Doc. 326-13]; a March 2014 letter concerning the FITS name sent by Allen to FITS retailers [Doc. 326-14]; and two FITS-related press releases from April and August 2014 [Docs. 326-15 & 326-16].

[12] Defendants rely on letters/emails exchanged between the parties concerning Crescent's production/sale of FITS after Yoe was terminated [Doc. 377-1]; a Crescent internal document reflecting a discussion of a name change to FITS [Doc. 377-2]; a letter from a company called FITSOK, requesting the name change [Doc. 377-3]; excerpts from the transcript of the deposition testimony of Yoe [Doc. 377-4]; an early advertisement for FITS [Doc. 377-5]; and a letter from counsel for Plaintiffs to counsel for Defendants, stating that YEI would take over manufacturing FITS socks beginning on February 26, 2016 [Doc. 377-6].

of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law provides the frame of reference to determine which facts are material. *Id.* A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *Jones v. Sandusky Cnty., Ohio*, 541 F. App'x 653, 659 (6th Cir. 2013); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson*, 477 U.S. at 249. Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports*, 253 F.3d at 907.

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jones*, 541 F. App'x at 659. To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 323. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *Nat'l Satellite Sports*, 253 F.3d at 907.

## III.    ANALYSIS

### A.    Res Judicata

Defendants argue that "[a]ll claims but those involving [Omni Wool Tactical] socks are res judicata," as a result of the entry of the final judgment in the Chancery Court Case, including:

- Counts I and II – federal trademark infringement by Crescent, as directed and authorized by Boyd and Allen. In these counts, Plaintiffs claim that "Crescent has exploited . . . YEI's federally-registered 'FITS®' and 'Game Knits®' trademarks, without authorization," by "utiliz[ing] the marks in connection with goods and products which have not been approved by YEI," including by "advertising, selling and marketing socks not manufactured pursuant to YEI's specifications or quality standards," and using "advertising and other materials which display the YEI Trademarks which have not been approved or authorized by YEI." [Doc. 201 at Page ID # 2881-82].

- Count V – violation of the Lanham Act, 15 U.S.C. § 1125(a). In this count, Plaintiff alleges that Crescent "has affixed false designations of origin, that is the FITS® and Game Knits® marks to its products without authorization and has otherwise competed unfairly and deceptively with YEI," and "has also affixed, without authorization, Crescent's marks 'World Softest' [sic] and 'Crescent Sock' on Game Knits® socks and packaging." [Doc. 201 at Page ID # 2883].

- Count VII – injunctive relief - trade secrets. In this count, Plaintiffs seek an injunction and damages related to Crescent and Omni's alleged "use or disclosure" of Plaintiffs' alleged trade secrets related to the production of FITS and Omni Wool Tactical socks[13] [Doc. 201 at Page ID # 2886-87].

- Count VIII – unfair or deceptive trade practices under Tennessee Code Annotated § 47-18-101, et seq. In this count, Plaintiffs allege Defendants have, among other things,

---

[13] Defendants seek summary judgment on res judicata grounds on Count VII with regard to Plaintiffs' claims arising from the use of the alleged trade secrets in the production of FITS socks only, not with regard to Plaintiffs' claims arising from the use of the alleged trade secrets to produce Omni Wool Tactical socks [*see* Doc. 321 at Page ID # 6031-32].

"falsely pass[ed] off their goods as those of YEI," "caus[ed] likelihood of confusion or of misunderstanding as to the source, sponsorship, ownership, approval or certification of goods or services," and "represent[ed] that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." [Doc. 201 at Page ID # 2888].

- Count X – unfair competition.  In this count, Plaintiffs allege Crescent has unfairly competed with YEI, because Crescent "has used, without YEI's authorization, its marks and represented to the public that FITS® and Game Knits® brand socks are products consistent with the reputation which the public associates with YEI's marks; and has sold inferior products using, without authorization, YEI's marks; and has used the YEI Trademarks without YEI's authorization." [Doc. 201 at Page ID # 2889].

- Count XI – breach of license agreement.  In this count, Plaintiffs allege that, pursuant to the Business Agreement and the employment contracts, YEI licensed FITS to Crescent, but that "it was understood and agreed that the marketing, manufacturing and promotional direction of the FITS® brand would be managed by Mr. Yoe on behalf of YEI and all marketing, manufacturing and promotional activity would be approved by YEI, as owner of these brands." [Doc. 201 at Page ID # 2890].  Plaintiffs further allege that Crescent breached this license agreement by "terminating Mr. Yoe, . . . failing to properly and prudently manufacture, market and promote the FITS® brand under Mr. Yoe's direction, . . . eliminating SKUs, changing the name and packaging of FITS® products, ceasing R&D of the FITS® products, failing to use pre-existing marketing practices approved by YEI, and . . . marking, manufacturing and promoting the FITS® products in a manner unacceptable to and unapproved by YEI." [*id.*].

- Count XIII – Boyd and Allen's inducement of breach of the Business Agreement. In this count, Plaintiffs allege that Defendants Boyd and Allen "directed and caused Crescent to file suit seeking to declare the Business Agreement void as to Mr. Yoe and YEI and to exercise complete and deliberate control over the YEI Brands," which, Plaintiffs argue, "constituted an intentional and unjustified inducement of a breach of the contractual relationship between Crescent and YEI." [Doc. 201 at Page ID # 2892-93].

### 1.  Law Regarding Res Judicata

"State-court judgments are given the same preclusive effect under the doctrine of res judicata . . . as they would receive in courts of the rendering state." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011). "If an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court." *Id.* (internal quotation marks and citations omitted). The Court must "look to the state's law to assess the preclusive effect it would attach to that judgment." *Id.* (internal quotation marks and citations omitted).

In Tennessee, "[t]he doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (citations omitted). "Res judicata acts as a 'rule of rest' meant to promote finality, prevent inconsistent or contradictory judgments, conserve resources, and prevent vexatious lawsuits." *Rainbow Ridge Resort, LLC v. BB&T Co.*, 525 S.W.3d 252, 259 (Tenn. Ct. App. 2016) (internal quotation marks and citations omitted). There are four elements to res judicata: (1) a previous action before a court of competent jurisdiction, (2) involving the same parties or their privies, (3)

involving the same cause of action, and (4) resulting in a final judgment on the merits. *Id.* (internal quotation marks and citations omitted).

It is undisputed that the McMinn County Chancery Court was a court of competent jurisdiction and that the litigation involved the same parties and resulted in a final judgment on the merits (of at least some of the claims). The only question is, therefore, whether the Chancery Court Case involved the same "cause of action."

Two suits are deemed the "same 'cause of action' for purposes of res judicata where they arise out of the same transaction or a series of connected transactions." *Creech v. Addington*, 281 S.W.3d 363, 381 (Tenn. 2009) (citations omitted). "The doctrine of res judicata 'extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-examination of the same question between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants.'" *Id.* (quoting *Banks v. Banks*, 77 S.W.2d 74, 76 (Tenn. Ct. App. 1934)).

"'[T]ransaction' for res judicata purposes is intended to be analogous to the phrase 'transaction or occurrence' as used in the Federal Rules of Civil Procedure." *Id.* at 380 (citing, *inter alia*, Fed. R. Civ. P. 13(a)(1) (determining whether counterclaims are compulsory)). "The Sixth Circuit applies a 'logical relationship' test" to determine whether claims arise out of the same transaction or series of transactions. *Roberts v. Vaughn*, No. W2008-01126-COA-R3-CV, 2009 WL 1608981, at *7 (Tenn. Ct. App. June 10, 2009) (quoting *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991)). Under this approach, courts are to "look to the issues of law and facts raised by the claims to see if they are largely the same." *Suddarth v. Household Comm. Fin. Servs., Inc.*, No. M2004-01664-COA-R3-CV, 2006 WL 334031, at *3-4 (Tenn. Ct. App. Feb. 13, 2006) (holding that claims are barred where "the former action arose out

of the same business relationship between the [parties] at issue in the present action, and specifically out of the guaranty agreement sued on in the former action") (citing *Sanders*, 936 F.2d at 277).

## 2. Plaintiffs' Claims

After having carefully reviewed the claims in this case and the Chancery Court Case, the Court concludes that the inducement of breach of contract claim and the remaining claims identified above to the extent they concern FITS socks, are part of the same series of transactions that were the subject of the Chancery Court Case and resulting injunction—the disintegration of the parties' business relationship, and the division and protection of the FITS brand in the wake of Yoe's termination from Crescent—and the claims are therefore barred by application of the doctrine of res judicata.

The Court first considers Yoe and YEI's inducement of breach of contract claim against Boyd and Allen (Count XIII). This claim relates to Boyd and Allen's alleged inducement of Crescent's breach of the Business Agreement. The underlying breach related to this count is the filing of the declaratory judgment action in the Chancery Court Case and the subsequent exercise of "complete and deliberate control" over FITS and Game Knits [*see* Doc. 201 at Page ID # 2892]. As detailed above, Yoe and YEI pursued (to final judgment[14]) in the Chancery Court Case a counterclaim against Crescent for this same underlying breach of the Business Agreement—Crescent's filing of the declaratory judgment action [*see* Doc. 24-4 at Page ID # 168]. Yoe and YEI also sought an injunction concerning Boyd and Allen's conduct with regard to FITS after

---

[14] *See* Doc. 56-1, McMinn County Chancery Court's Order Regarding Post Trial Motions, at Page ID # 618 ("The court's Final Order is hereby amended so as to state that the filing of a declaratory action to determine the validity of the April 14, 2009 Amendment and the September 4, 201[2] Business Agreement does not constitute a breach of such agreements.").

Yoe's termination. Also, Boyd and Allen were parties to the Chancery Court Case, and it is beyond serious dispute that they were at least partially in control of Crescent at the time and therefore contributed to the decision to terminate Yoe and file the Chancery Court Case against Yoe and YEI. The inducement of the breach of the Business Agreement clearly arises out of the same series of transactions that led to the breach of the Business Agreement, on which Yoe and YEI have already sued Defendants. The Court will therefore grant Defendants' motion for summary judgment with regard to Count XIII, based on the application of the doctrine of res judicata.

Second, to the extent that the trademark infringement (Counts I and II), Lanham Act (Count V), misappropriation of trade secrets (Count VII), unfair/deceptive trade practices (Count VIII), unfair competition (Count X), and breach of license agreement (Count XI) claims are related to FITS (and not Omni Wool or Game Knits), the claims should have been brought as alleged violations of the injunction in the Chancery Court Case, and therefore these claims are also barred.[15] The injunction was clearly intended to protect the FITS brand after the disintegration of the parties' business relationship. Yoe and YEI obtained the injunction very early in the Chancery Court Case, and the injunction undisputedly persisted at least through April 2015, when the chancery court entered its order regarding post-trial motions [Doc. 56-1]. That order provides, "[w]ith regard to the portion of this motion pertaining to the agreed order for an injunction in this

---

[15] As explained above, the injunction required Crescent to, *inter alia*, "fulfill any and all orders for FITS® . . . products in a timely and appropriate manner, . . . using the correct and proper materials, packaging, technology, manufacturing specifications . . . ." [Doc. 24-7 at Page ID # 272-73]. The August 2017 final judgment in the Chancery Court Case provides that, "[t]he parties have filed notice acknowledging that the monetary judgment has been satisfied. Accordingly, the Clerk shall close the case *without prejudice to the Counter-Plaintiffs to reopen the case to enforce the non-monetary portion of the judgment.*" [Doc. 300-4 (emphasis added)]. Whether Yoe and YEI are able to seek relief for alleged violations of the injunction is not before this Court.

case which is still in effect, the parties have agreed that that injunction shall remain in place as set out in this order." [*Id.* at Page ID # 627].

It is clear from Yoe and YEI's pleadings in the Chancery Court Case, in particular the January 2014 amended counterclaim and third-party complaint detailed above, that the allegedly infringing/unfair conduct with respect to FITS was occurring or had already occurred prior to the expiration of the injunction. The Court therefore rejects Yoe and YEI's characterization of the Chancery Court Case as having a "singular" purpose of "invalidat[ing] the contracts that gave YEI ownership of FITS and Bob Yoe a severance package," and as "deal[ing] with matters that existed before September 3, 2013, when Crescent sued Yoe." [Doc. 382 at Page ID # 10990-91]. The existence of the injunction, which is by nature forward looking, belies Yoe and YEI's characterization, as do the allegations in Yoe and YEI's January 2014 amended counterclaim and third-party complaint in the Chancery Court Case:

> 22.     Upon information and belief, since terminating Mr. Yoe, Crescent has eliminated certain SKUs of FITS® product[s], changed the names of certain FITS® products, changed the packaging of products, ceased research and development of the FITS® products, is failing to use pre-existing marketing practices including but not limited to preseason terms and conditions, sales collateral, and other sales support, is failing to maintain the proper levels of FITS® product[s] in the retail stores and proper inventory levels at Crescent, and is representing that Crescent is the owner of the FITS® brand. Each of these actions is causing irreparable damages to the FITS® bran[d] to Yoe Enterprises as owner of the FITS® brand and to Mr. Yoe as the CEO of Yoe Enterprises.

[Doc. 24-4 at Page ID # 221]. These assertions, along with the injunction, effectively expanded the scope of the lawsuit to include events and interactions between the parties that occurred after the filing of the initial chancery court complaint. The alleged acts of infringement, unfair competition, etc., arise out of the same series of transactions that necessitated the injunction in the

first place—once again, the disintegration of the parties' business relationship, and the division and protection of the FITS brand in the wake of Yoe's termination from Crescent.

Yoe and YEI argue that because they voluntarily nonsuited their intellectual property infringement/trade secret/Lanham Act claims in the Chancery Court Case pursuant to Tennessee Rule of Civil Procedure 41.01, res judicata cannot apply to their claims in this case [*see* Doc. 382 at Page ID # 10985-88]. The Court rejects this argument under the circumstances at issue here. The doctrine of res judicata, as explained above, "bars a second suit between the same parties or their privies on the same claim with respect to all issues that were, or could have been, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (citations omitted). Parties who nonsuit some, but not all, of their claims in order to proceed on the nonsuited claims in a different forum or at a later date, do so at their own risk, particularly where, as here, the parties proceed to a final on-the-merits judgment regarding any related claims remaining in the original suit. *See, e.g., Hutcherson v. Lauderdale Cnty, Tenn.*, 326 F.3d 747, 758 (6th Cir. 2003) (In a case where a plaintiff "chose to split his cause of action and seek recovery on only part of it, saving alternate claims against the same defendant for later litigation," the court found that "splitting of a cause of action . . . 'is not fatal to the first action,' but precludes the second under res judicata." (citations omitted)); *Regents of the Univ. of Mich. v. St. Jude Medical, Inc.*, No. 12-12908, 2013 WL 673797, at *4 (E.D. Mich. Feb. 25, 2013) ("The Sixth Circuit has explained that a failure to raise a compulsory counterclaim bars the claim, whether it be under a theory of res judicata, or a theory of waiver or estoppel." (citations omitted)).

In so ruling, the Court acknowledges Plaintiffs' citation of *Clements v. Austin*, 673 S.W.2d 867, 869-70 (Tenn. Ct. App. 1983), in which the Tennessee Court of Appeals held that a nonsuited counterclaim was not barred from later litigation by application of res judicata; however, in that

case, the court of appeals held that the counterclaim was nevertheless barred by Tennessee Rule of Civil Procedure 13, the compulsory counterclaim rule. In other words, the result was the same—the defendant, who nonsuited a counterclaim arising out of the same transaction or occurrence as the plaintiff's claim, was barred from later litigating the merits of his previously nonsuited counterclaim.[16] *Id.*

Moreover, in the instant case, even as Yoe and YEI nonsuited most of their intellectual-property related claims, they never asked that the injunction be vacated; indeed, they requested that it be extended [*see* Doc. 24-10 (motion for extension of temporary injunction, noting that the purpose of the injunction "was so that the value of the FITS brand sock and other property rights would not be compromised and/or lost during the pendency of" the Chancery Court Case)]".

Yoe and YEI also argue that Crescent waived its res judicata argument or acquiesced in the "splitting" of their claims between state and federal court by not raising this argument sooner in federal court [*see* Doc. 382 at Page ID # 10992-96]. The Court rejects this argument for the same reason the Court recently permitted Crescent to amend its answer to the third amended complaint to assert res judicata as an affirmative defense: the chancery court decision was not "final" for res judicata purposes until entry of the final judgment in the Chancery Court Case on August 23, 2017 [*see* Doc. 406 at Page ID 11459-61].[17]

---

[16] None of the other cases cited by Plaintiffs involved the question of whether res judicata applied to bar a nonsuited claim in a later suit when related (compulsory) claims had been previously adjudicated on the merits.

[17] In the memorandum and order granting in part Crescent's motion to amend its answer to the third amended complaint, the Court found that "by seeking to amend the answer to assert a res judicata defense within a short time of the entry of the final judgment in the Chancery Court Case, Crescent acted diligently and satisfied the applicable requirements of [Federal Rules of Civil Procedure] 15 and 16." [Doc. 406 at Page ID #11460-61].

Finally, Yoe and YEI argue that "the Chancery Court's lack of jurisdiction over Yoe and YEI's patent claim bars the application of res judicata" in this case, because the patent infringement claims were the "initial thrust of this federal litigation," and federal courts have exclusive jurisdiction over patent claims under 28 U.S.C. § 1338 [Doc. 382 at Page ID # 10996]. This argument is not persuasive. Regardless of whether Yoe and YEI could have brought patent infringement claims in the Chancery Court Case, they should have brought their FITS claims related to trademark infringement, the Lanham Act,[18] misappropriation of trade secrets, unfair or deceptive trade practices, unfair competition, and breach of the license agreement, as these claims were bound up with the Chancery Court Case injunction and Yoe and YEI's amended counterclaims. Any issue that res judicata does not apply to the patent claims is not before this Court as all patent claims were voluntarily dismissed from this litigation.

For unknown reasons, the production of Game Knits Socks is not mentioned in the Chancery Court Case injunction [*see* Doc. 24-7]. Whether Crescent infringed on YEI's trademark rights to Game Knits (or carried out any of the other wrongful conduct complained of by Plaintiffs in the third amended complaint in this case with regard to Game Knits), may need to be determined by reference to facts wholly unrelated to FITS and its operation under the parties' agreements and the agreed injunction. Yoe and YEI nonsuited the only claims and allegations related to whether Crescent was infringing YEI's intellectual property rights to Game Knits in the Chancery Court

---

[18] Tennessee state courts have concurrent jurisdiction over claims of unfair competition brought under the Lanham Act, which is the type of Lanham Act claim Yoe and YEI assert here. *Terra Aqua Gabions, Inc. v. Midwest Constr. Prods. Corp.*, No. M2005-01753-COA-R3-CV, 2006 WL 2105996, at *5 (Tenn. Ct. App. July 28, 2016) ("We agree with the federal courts and our sister jurisdictions that state courts have concurrent subject matter jurisdiction to adjudicate claims of unfair competition brought under the Lanham Act." (citations omitted)); *see also* 28 U.S.C. § 1338 (granting original, but not exclusive, jurisdiction over "any civil action arising under any Act of Congress relating to . . . trademarks")

Case and Game Knits is not mentioned in the injunction. The relevance of the Business Agreement (which *was* part of the Chancery Court Case) to Game Knits is not clear to the Court. Under the circumstances, the Court finds that Defendants have not demonstrated that Yoe and YEI's claims in this case related to Game Knits in Counts I, II, V, VII, VIII, and XI are barred by application of the doctrine of res judicata.

### 3.    Conclusion regarding Res Judicata

For these reasons, the Court will grant Defendants' motion for summary judgment [Doc. 320] with respect to Count I (trade mark infringement against Crescent), Count II (trademark infringement against Boyd and Allen), Count V (violation of the Lanham Act), Count VII (injunctive relief – trade secrets), Count VIII (unfair or deceptive trade practices under Tenn. Code Ann. § 47-18-101 et seq.), Count X (unfair competition), and Count XI (breach of the license agreement) to the extent these claims relate to FITS socks only (but not to the extent these claims relate to Game Knits or the Omni Wool Tactical and Hiwassee Trading Company claims). It appears to the Court that this decision fully disposes of Count XI for Crescent's alleged breach of the license agreement, which does not appear to implicate issues about Game Knits or Omni Wool Tactical and Hiwassee Trading Company socks. The Court will also grant Defendants' motion for summary judgment with respect to respect to Count XIII (Boyd and Allen's inducement of breach of the Business Agreement), in its entirety.

In addition, the Court finds that the declaratory relief Plaintiffs seek in Counts VI (declaratory judgment – trade secrets) and XVI (trade secret misappropriation and unfair competition—Omni Wool Tactical and Hiwassee Trading Company Socks), is moot to the extent it concerns trade secrets that relate only to FITS socks (i.e., those trade secrets that Plaintiffs do not allege were incorporated into the nine Omni Wool Tactical socks or the one Hiwassee Trading

Company sock that remain at issue in this case[19]), because it is undisputed that Defendants are no longer producing FITS socks, and Plaintiffs have submitted no proof whatsoever of any future, threatened misappropriation of these specific trade secrets. To the extent Plaintiffs seek monetary damages, costs or fees concerning Defendants' alleged use or misuse of the FITS-only trade secrets in these Counts (VI and XVI), the Court finds that res judicata applies. For clarity's sake, the Court restates that it finds all trade secret claims (Counts VI, VII, and XVI), for any type of relief, that concern the FITS-only trade secrets (i.e., those trade secrets that Plaintiffs do not allege are incorporated into the nine Omni Wool Tactical socks or the one Hiwassee Trade Company sock at issue in this case) are either moot or barred by res judicata. Any relief Defendants seek in their counterclaims [*see* Doc. 409 at Page ID # 11495-96] concerning these specific trade secrets is also either moot or barred by res judicata.

As YEI's motion for partial summary judgment [Doc. 322] seeks judgment only on its claims for trademark infringement related to FITS, and because the Court has concluded that YEI's FITS trademark infringement claims (Counts I & II) are barred in this case by application of the doctrine of res judicata, the Court will also deny YEI's motion for partial summary judgment.

The Court also notes that Defendants alternatively argue for summary judgment on Plaintiffs' FITS-only related claims based on Defendants' position that Crescent was operating within the terms of the parties' licensing agreement the entire time Crescent was producing FITS

---

[19] According to Defendants, the trade secrets that Plaintiffs do not allege were incorporated into the nine Omni Wool Tactical socks or the one Hiwassee Trading Company sock are trade secret numbers 4, 5, 7-12, 15, 17-20, and 22 [*see* Doc. 325 at Page ID # 6186; *see also* Doc. 269 (list of all 22 trade secrets)]. Plaintiffs do not appear to dispute that these trade secrets concern FITS socks only, and not the Omni Wool Tactical or Hiwassee Trading Company socks at issue in this case [*see* Doc. 382 at Page ID # 11013-15]. The Court does not apply the doctrine of res judicata to any claims regarding alleged use or misuse of YEI's alleged trade secrets in conjunction with Omni Wool Tactical or Hiwassee Trading Company socks.

[*see* Doc. 325 at Page ID # 6160-69]. Because the Court has concluded that such claims are barred by application of the doctrine of res judicata, it is unnecessary for the Court to address this alternative argument, and the Court declines to do so.

Defendants' remaining arguments concerning the Game Knits socks and Plaintiffs' claims relating to Omni Wool Tactical and Hiwassee Trading Company socks, and the relationship between these and FITS socks, are addressed below.

### B.    Trademark Abandonment – Game Knits

Defendants Crescent, Boyd and Allen alternatively argue that they are entitled to summary judgment on Plaintiffs' claims related to Game Knits because Plaintiffs abandoned the Game Knits trademark[20] [Doc. 325 at Page ID #6169-74]. Pursuant to 15 U.S.C. § 1127:

> A mark shall be deemed to be "abandoned" if . . . the following occurs:
>
> (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

In this case, it is undisputed that under Yoe's leadership, Crescent began producing Game Knits socks in either November or June 2012 [*see* Allen Declaration, Doc. 321-1; Yoe Dep., Doc. 321-2 at Page ID # 6069]. Crescent continued to produce and sell Game Knits socks until July 20, 2015 [Allen Declaration, Doc. 321-1]. Plaintiffs Yoe and YEI, however, have not been involved in the production or sale of Game Knits since September 4, 2013, when Defendants terminated Yoe. Defendants therefore claim that the statutory presumption of abandonment arose on

---

[20] Plaintiffs argue Defendants waived their right to assert this affirmative defense [*see* Doc. 382 at Page ID # 11004]. The Court has allowed Defendants to amend their answer to the third amended complaint to assert this defense [*see* Doc. 406]. The Court therefore rejects Plaintiffs' waiver argument and will address the abandonment issue.

September 4, 2016 (three years after Yoe's termination), and that they are entitled to rely on it in support of their motion.[21]  They further rely on the following deposition testimony taken from Yoe on August 1-2, 2017, concerning Game Knits:

> Q.      Mr. Yoe, Luke Eldridge testified that he wasn't aware of any plans to use Game Knits in the future.  Do you have any – I assume he's correct that there are no plans to use it?
>
> A.      He's incorrect.  I have not talked to him about the plans for Game Knits, but I think there is some real potential and I have talked to someone else about it.
>
> Q.      Okay.   Who have you talked to about it?
>
> A.      Matt Alexander.
>
> Q.      Who is Matt Alexander?
>
> A.      Matt Alexander works for me.
>
> Q.      Okay.  And what is his position?
>
> A.      He's . . . working in the areas of marketing . . . he's helping me with accounting . . . with the website and . . . with the branding strategy.
>
> Q.      Okay.  What is the plan for Game Knits?
>
> A.      We don't have any specific plan.  There is no way we can make concrete plans until after this court case has been resolved.
>
> Q.      Okay. So you don't have any target date on when it's going to be produced?

---

[21] Defendants argue in their motion that "because YEI had no control over Crescent's use of the mark" after Yoe was fired, Crescent's use during that time (from September 4, 2013 until July 20, 2015, when Crescent ceased production of Game Knits) "did not inure to YEI's benefit," and therefore it should be included when calculating the three years necessary for the abandonment presumption [Doc. 325 at Page ID # 6172].  It appears, however, that Defendants refused to allow Yoe to exercise control over Crescent's use of the mark after terminating him.  Whether the period of time used to calculate the three-year abandonment presumption should include time when the trademark owner was prevented from using his trademark by the party claiming abandonment is not clear to the Court.  The parties did not address this issue, and the Court will not decide it because, regardless, the Court concludes Defendants failed to meet their burden of showing intent to abandon by summary judgment standards.

A.    We don't have concrete plans on much until after this court case is resolved.

[Doc. 321-2 at Page ID # 6073].

"[B]ecause a finding of abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that defendants asserting an abandonment defense face a 'stringent,' 'heavy,' or 'strict burden of proof.'" *Stilson & Assocs., Inc. v. Stilson Consulting Grp., LLC*, 129 Fed. App'x 993, 995 (6th Cir. 2005) (quoting *Cumulus Media, Inc. v. Clear Channel Commc'n*, 304 F.3d 1167, 1175 (11th Cir. 2002)). "[I]n order for a party to succeed on a claim of abandonment, it must prove the elements of both non-use and intent, i.e., that the other party actually abandoned its mark through non-use and that it intended to do so." *Id.* (internal quotation marks and citations omitted).

It is undisputed that Plaintiffs are not currently using the Game Knits trademark. To establish intent, Defendants rely on the statutory presumption created by the fact that YEI and Yoe have not produced Game Knits socks since Yoe was terminated from Crescent, and Yoe's deposition testimony. The Court finds this evidence insufficient to show there is no genuine issue of material fact regarding Plaintiffs' intent to resume production of Game Knits.

Regarding the presumption, courts have held that "[i]f a [trademark] registrant's nonuse is excusable, the registrant has overcome the presumption that its nonuse was coupled with an 'intent not to resume use.'" *Imperial Tobacco Ltd. v. Philip Morris Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990); *see also Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1396 (9th Cir. 1985) ("[T]his is a presumption that may be rebutted by showing valid reasons for nonuse."); *Original Rex, L.L.C. v. Beautiful Brands Int'l, LLC*, 792 F. Supp. 2d 1242, 1253 (N.D. Okla. 2011) (citations omitted). Here, Yoe and YEI have been embroiled in litigation during the entire period of nonuse,

with the Chancery Court Case in particular concerning ownership of the disputed intellectual property, including the Game Knits trademark.

Defendants cite a Second Circuit Court of Appeals case which holds that a "lawsuit against an infringing user ordinarily is not a sufficient excuse for failure to use a trade name." *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847, 851 (2d Cir. 1992) (citations omitted). But the Chancery Court Case at issue here was not simply a suit by a trademark holder against an independent, infringing user; rather, it was a suit by the allegedly infringing user (Crescent) against the trademark holder (YEI), in which the allegedly infringing user claimed to own the trademark, or at least claimed the documents purporting to grant ownership of the trademark to YEI were invalid [*see* Doc. 382-1 (Chancery Court Case complaint)]. As Yoe and YEI point out, Crescent maintained its position that the documents were invalid through June 2015 [*see* Doc. 382 at Page ID # 11006, Doc. 382-5 (Crescent's statement of the issues on appeal in the Chancery Court Case)]. In these circumstances, the Court finds Yoe and YEI acted reasonably in not attempting to produce Game Knits socks until, at least, that time; presumably Yoe and YEI would have had to find a new manufacturer for Game Knits and obtain new materials, all the while not being certain if they were able to legally produce the socks. *See La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1274 (2d Cir. 1974) (describing *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794 (9th Cir. 1970) which held that non-use was justified by litigation, and noting "it could have been disastrous for defendant in that case to have begun an extensive merchandising campaign while the ownership of its trademark was still in litigation"). Because the Court concludes Plaintiffs' nonuse was excusable, Defendants are not entitled to rely on the statutory presumption to establish Plaintiffs' intent not to resume production of Game Knits.

Yoe's deposition testimony, quoted above, is likewise insufficient to meet the "strict burden of proof" required for proving abandonment, particularly on a motion for summary judgment. *See Stilson & Assocs., Inc.*, 129 Fed. App'x at 995 (quoting *Cumulus Media, Inc.*, 305 F.3d at 1175). It is true that Yoe admitted he had no "specific plan," for Game Knits, but he also testified that he believed the brand had potential and that he had spoken to someone in his company about it. Yoe also specifically said that Luke Eldridge's testimony that there were "no plans to use [Game Knits]" was "incorrect." [Doc. 321-2 at Page ID # 6073 (Yoe Dep.)]. The Court finds the testimony equivocal, at best. *Cf. Metro. Life Ins. Co. v. O'M & Assocs. LLC*, No. 06 C 5812, 2009 WL 3015210, at *4-5 (N.D. Ill. Sept. 16, 2009) (granting summary judgment to defendant on Lanham Act claims due to the plaintiff's abandonment, finding that email from the plaintiff's director of operations telling employees "'to be certain' to cease using" the trademarked name and "to dispose of stationary with" the trademarked name on it "demonstrates [the plaintiff's] intent to abandon the mark").

For these reasons, the Court finds there is a disputed question of fact concerning Plaintiffs' intent not to resume production of Game Knits. The Court will deny the portion of Defendants' motion seeking summary judgment on Plaintiffs' Counts I & II (trademark infringement), Count V (Lanham Act violations), Count VIII (unfair or deceptive trade practices), and Count X (unfair competition) as those claims relate to Game Knits.[22]

---

[22] The only bases for summary judgment Defendants advance with regard to Plaintiffs' Game Knits claims are res judicata, which is addressed earlier in this memorandum and order, and abandonment.

### C. YEI's Claim for Intentional Interference with Prospective Business Relations (Count XV)

Defendants next argue that they are entitled to summary judgment on Count XV of Plaintiffs' third amended complaint, which alleges that Crescent and/or Omni Wool intentionally interfered with YEI's business relationships by "attempt[ing] to divert customer sales from the FITS® brand to . . . themselves by asking customers who specifically request to purchase or who have purchased FITS® products if they would purchase a strikingly similar Crescent and/or Omni Wool product instead." [Doc. 201 at Page ID # 2894]. Defendants argue that, as a result of the "competitor's privilege" which exists in intentional interference claims,[23] "YEI must present evidence Crescent's conduct amounted to improper means," but that "YEI's allegations of 'improper means' are coextensive with and subsumed by its allegations of trade secret misappropriation and unfair competition claim [Count XVI]." [Doc. 325 at Page ID # 6175]. Moreover, Defendants argue that the "only damages theory remotely connected to" Plaintiffs' intentional interference claim directly relates to Defendants' alleged misappropriation of trade secrets [*id.* at Page ID # 6177]. Therefore, Defendants argue, the Court should enter summary judgment in their favor on Count XV, "[t]o prevent the risk of improper double recovery." [*id.* at Page ID # 6174].

Nevertheless, as Plaintiffs point out, "YEI may proceed with its claim until it must elect a remedy after trial." [Doc. 382 at Page ID # 11006]. "A plaintiff is entitled to submit two or more alternate theories to the jury, review the jury's verdict, and subsequently elect on which theory the

---

[23] *See, e.g.*, *Norvell v. Skin Solutions, LLC v. Solaire Pty Ltd.*, No. 2:13-cv-0117, 2014 WL 3353246, at *3-5 (M.D. Tenn. July 8, 2014) (finding that there is a "competitor's privilege" under Tennessee law, which allows "a competitor . . . to interfere with a competitor's contract with a third party to acquire business for itself" so long as, *inter alia*, the competitor "does not employ wrongful means") (citing *Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.3d 538 (Tenn. 1990) (other citations omitted)).

plaintiff wishes to recover." *DirecTV, Inc. v. McCool*, 339 F. Supp. 2d 1025, 1033 (M.D. Tenn. 2004) (citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 908-10 (Tenn. 1999)). "This election of remedies exists because 'it would be manifestly unfair to require plaintiffs in such cases to elect before the jury has answered the issues' . . . [t]hus, it would be inappropriate for the [c]ourt to dismiss one of Plaintiff's claims at summary judgment simply because an election of remedies may be required." *Id.* (quoting *Concrete Spaces*, 2 S.W.3d at 908). *If* the jury awards Plaintiffs damages arising from the same conduct on Plaintiffs' intentional interference and trade secret misappropriation/unfair competition claims, "the allocation of those damages [among the claims] is something that will need to be sorted out at that time." *See Russell v. Campbell*, No. 1:16-cv-00098, 2017 WL 2131642, at *8 n.5 (M.D. Tenn. May 17, 2017).[24]

---

[24] Defendants also argue for the first time in their reply brief that Plaintiffs' intentional interference with business relations should be dismissed because Plaintiffs' only proof on damages, from Mr. Michael Costello, is "impermissibly speculative," and that therefore Plaintiffs' claim should be dismissed for failing to provide sufficient proof of the damages element [Doc. 394 at Page ID # 11266]. Because this argument was raised for the first time in Defendants' reply brief, the Court declines to consider it. *See Cooper v. Shelby Cnty.*, No. 07-2283-STA-cgc, 2010 WL 3211677, at *3 n.13 (W.D. Tenn. Aug. 10, 2010) (citing Sixth Circuit cases declining to consider arguments first raised in reply briefs).

Crescent does very briefly argue in its opening brief that "YEI's calculation of damages for its trade secret claim is insufficient to satisfy the necessary element of damages for its intentional interference claim," citing *PPG Industries, Inc. v. Payne*, No. 3:10-CV-73, 2012 WL 1836314 (E.D. Tenn. May 21, 2012) [*see* Doc. 325 at Page ID # 6177]. The court in that case dismissed the defendants' counterclaim for alleged intentional interference with business relations, finding that the defendants failed to provide any probative evidence of damages, an essential element of an intentional interference claim. The court reasoned that the defendants' financial expert's report simply stated that "it is *possible* that [the defendants'] customer relations have been affected by actions of [the plaintiff]," and that the defendants' only other alleged damages were those arising out of plaintiff's alleged "Lanham Act violations." *PPG Indus.*, 2012 WL 1836314, at *6 (emphasis in original). The court further reasoned that a "calculation of damages under the Lanham Act does not translate into a showing of damages based upon PPG's intentional interference with defendants' business relationships by improper means." *Id.*

Crescent's argument on this point appears to merely be part of its "double recovery" argument in its opening brief, and so again the Court notes it will not address the argument further,

The Court will therefore deny Defendants' request for summary judgment on Plaintiffs' Count XV for intentional interference with business relations.

### D.     Plaintiffs' Unfair Competition Claim in Count XVI

Crescent next argues that Plaintiffs' unfair competition claims asserted in Count XVI are actually infringement of trade dress rights claims, which should be dismissed because Plaintiffs have failed to provide evidence of a number of elements of a trade dress claim [Doc. 325 at Page ID # 6178-85].

Nevertheless, as Plaintiffs point out in their response, Plaintiffs' unfair competition claim is not a trade dress claim, it is an unfair competition claim [*see* Doc. 382 at Page ID # 11008-09 ("YEI has not asserted, nor does it assert now, a claim for trade dress infringement.  Count XVI comprises exactly what its plain language describes—claims under the Tennessee Uniform Trade Secrets Act and for unfair competition, both related to Defendants' sale of socks to the military other than FITS.")].  The Court agrees with Plaintiffs: "For that reason alone, the Defendants' position fails." [*Id.* at Page ID # 11009].

Moreover, the Court finds, at least based on the pleadings, arguments, and exhibits before it now, that Plaintiffs have shown there is a question of fact regarding whether Plaintiffs have established the elements of unfair competition, as this Court described those elements in *Aquashield, Inc. v. Sonitec Vortisand, Inc.*, No. 13-cv-119, 2013 WL 5524598, at *11 (E.D. Tenn. Oct. 4, 2013) (cited by Plaintiffs):

---

except to note that the Lanham Act claims in *PPG Industries* do not appear to involve the alleged misuse of intellectual property as the Lanham Act claims in this case do.  *See id.*, 2012 WL 1836314, at *13-17.  Moreover, it is not clear to the Court at this time, at least from Crescent's motion for summary judgment, that Mr. Costello's report is as deficient as the expert report in *PPG Industries*.

(1) the defendant engaged in conduct which "passed off" its organization or services as that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to deceive the public as to the source of services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization.

(citations omitted). For example, Plaintiffs cite the following email exchange from February 2016, between what appears to be a FITS customer and a sales representative for Crescent:

> Hi Bob,
>
> I wanted to do Fit[s] Socks but I just received word that they will be now from a company Om[n]i Wool. Can you update me on the change. I know nothing else.
> . . . .
>
> Thanks,
> Agnieszka Szmeterling
> . . . .
>
> Hi Agnieszka,
>
> It's great to hear from you again. "Crescent sock (the manufacture of the fits socks in the past) is just changing their name to Omni wool. The socks are still same quality as the fits, but at lower pricing and new and improved packaging. I'll send you a few Samples next week to review. Talk with you soon.
>
> Best Regards,
> Bob Mahin

[Doc. 382-7 at Page ID # 11132].

The Court will therefore deny Defendants' motion to the extent it seeks summary judgment on Plaintiffs' unfair competition claim set forth in Count XVI.

### E. Plaintiffs' Trade Secret Claims Concerning Four Omni Wool Tactical Socks (Counts VI, VII, and XVI)

Earlier in this Memorandum and Order, the Court found that the parties' trade secrets-related claims involving the 14 FITS-only trade secrets (i.e., those trade secrets which Plaintiffs

do not allege are incorporated into the nine Omni Wool Tactical and one Hiwassee Trading Company sock at issue in this case; specifically trade secret numbers 4, 5, 7-12, 15, 17-20, and 22) are either moot or barred by application of the doctrine of res judicata. Plaintiffs concede that YEI's evidence is that Defendants have misappropriated only eight of its 22 trade secrets in the Omni Wool Tactical socks and one Hiwassee Trading Company sock [Doc. 382 at Page ID # 11015]. According to Defendants, Plaintiffs allege Defendants misappropriated these eight trade secrets in manufacturing nine different Omni Wool Tactical socks and one Hiwassee Trading Company sock [Doc. 325 at Page ID # 6187].[25] Defendants argue, however, that claims about four of the nine types of Omni Wool Tactical socks and one Hiwassee Trading Company sock (the three types knitted on a 108-needle machine, and the one type knitted on an 84-needle machine[26]) should be dismissed because both of Plaintiffs' technical experts (Oscar Nardi ("Nardi") and Mitchell Beckler ("Beckler")) admit that Plaintiffs have no evidence that Plaintiffs' alleged trade secrets were used to make these four types of socks [*see* Doc. 325 at Page ID # 6187-88].

As far as the Court can tell, Plaintiffs do not address this argument in their response [Doc. 382] to Defendants' motion. Beckler testified that his report did not contain an opinion that trade secret numbers 1, 2, 3, 6, and 21[27] were used in these four types of socks [*see* Beckler Dep., Doc. 325-8 at Page ID #6262-64], which supports Defendants' argument on this issue. Nardi's

_____

[25] These claims are asserted in Counts VI, VII, and XVI of Plaintiffs' third amended complaint [see Doc. 201]. Plaintiffs' third amended complaint does not identify the number or type of Omni Wool Tactical or Hiwassee Trading Company socks that incorporate the alleged trade secrets. Nevertheless, Plaintiffs do not appear to dispute that at most ten types of socks (nine Omni Wool Tactical socks and one Hiwassee Trading Company sock) are at issue in these counts.

[26] Plaintiffs also do not appear to dispute that three of the ten accused socks were knitted on a 108-needle machine and one of the ten accused socks was knitted on an 84-needle machine.

[27] Beckler's deposition testimony regarding whether trade secret numbers 13, 14, and 16 were used in the four types of socks was less clear [*see* Doc. 325-8 at Page ID # 6262-64 (Beckler Dep.)].

testimony is somewhat less clear [Doc. 325-7 at Page ID # 6256-60].  Counsel for Plaintiffs should be prepared to address whether any of the eight trade secrets are incorporated into these four socks knitted on either a 108-needle machine or on an 84-needle machine at the final pretrial conference on November 20, 2017.

The Court will reserve ruling on Defendants' motion on Plaintiffs' Count XVI (trade secret misappropriation and unfair competition – Omni Wool Tactical and Hiwassee Trading Company socks), to the extent this count concerns the three types of socks knitted on a 108-needle machine, and the one type knitted on an 84-needle machine.

### F.    Plaintiffs' Prayer for Trade Secret Damages and Lost Profits

Finally, Defendants argue Plaintiffs' prayer for trade secret damages and lost profits should be dismissed because "YEI's damages expert, Mr. Costello, conceded YEI calculated its damages and lost profits using a methodology courts repeatedly reject," and therefore, the "record evidence is insufficient to support either theory with any reasonable degree of certainty." [Doc. 325 at Page ID # 6188].  Specifically, Defendants argue that YEI's lost profits calculation is based on sales made by Crescent with YEI's profit margin applied.  Defendants cite *Allied Erecting and Dismantling Co., Inc. v. Genesis Equipment & Manufacturing, Inc.*, 511 F. App'x 398, 403-04 (6th Cir. 2013) (applying Ohio law).  In that case, the Sixth Circuit recognized that a plaintiff claiming damages for lost profits arising from misappropriation of trade secrets must prove causation; in other words, a plaintiff cannot rely on sales of an infringing product made by a competitor alone in order to establish its own lost profits.  *Id.* (internal citations omitted).  The court held:

> Adopting [the plaintiff's] theory (that lost profits may be established *solely* on the basis of profits the defendant gained through its misappropriation) would allow recovery even in the absence of evidence that the plaintiff in

fact suffered loss and would blur any distinction between the unjust-enrichment and lost-profits theories of damages.

*Id.*

For their part, Plaintiffs essentially agree that this was the method Mr. Costello used to calculate Plaintiffs' "lost profits." [*see* Doc. 382 at Page ID # 11017 (Mr. Costello "took the sales that Crescent made to the military in 2016 with its Omni Wool Tactical socks—sales that Crescent had previously made with YEI's FITS socks . . . –and applied YEI's profit margin.")]. Plaintiffs point out, however, that these damages are expressly permitted by the Tennessee Uniform Trade Secrets Act, in the form of damages for "unjust enrichment." Tenn. Code Ann. § 47-25-1704(a) ("[A] complainant is entitled to recover damages for misappropriation . . . . Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.") Plaintiffs cite *Hamilton-Ryker Group, LLC v. Keymon*, No. W2008-00936-COA-R3-CV, 2010 WL 323057 (Tenn. Ct. App. Jan. 28, 2010) (applying Tennessee's Trade Secrets Act). In that case, the Tennessee Court of Appeals held:

> Here, the trial court utilized the total amount that Keymon [the defendant] had billed [the plaintiff Hamilton-Ryker's former clients] for Keymon's work on the Verizon telephone directories. It then applied the profit percentage Keymon calculated for Hamilton-Ryker's Verizon work. Regardless of whether Hamilton-Ryker would have continued doing Verizon's directory processing work during the nearly four-year time span from Keymon's layoff, **this was a reasonable method to calculate the amount by which Keymon was unjustly enriched for the Verizon work she obtained by virtue of the trade secret information she misappropriated from Hamilton-Ryker. .** . . We find the trial court's calculation of damages under the Trade Secrets Act is fully supported by the evidence in the record.

*Id.* at *18 (emphasis added).

In reply, Defendants concede that Mr. Costello's method was appropriate for calculating unjust enrichment damages, but they argue that "YEI's expert, Mr. Costello, made it clear his calculation of trade secret damages represented YEI's lost profits, not unjust enrichment damages." [Doc. 394 at Page ID # 11269].

The Court finds that the label Mr. Costello attached to his damages calculation is not dispositive on the issue of whether Plaintiffs are entitled to the damages as a matter of law. As explained in *Hamilton-Ryker*, the Tennessee Trade Secret Act permits successful trade secret misappropriation plaintiffs to recover the type of damages Mr. Costello calculated in the form of "unjust enrichment" damages. In their third amended complaint, Plaintiffs request "all . . . statutory and common law damages" arising from Crescent's alleged misappropriation of Plaintiffs' trade secrets [*see* Doc. 201 at Page ID # 2898]. Defendants' argument that Plaintiffs are not entitled to their "trade secret damages" and "lost profits" damages as a matter of law therefore fails.

Defendants also emphasize that Plaintiffs rely on Crescent's actual sales during 2014 to show YEI's "lost profits" between March 2016 and February 2017, and argue, "[o]ther than bare assumption, YEI can point to no evidence suggesting the two time periods were sufficiently comparable." [Doc. 325 at Page ID # 6189]. The Court finds there are material questions of fact regarding whether these two time periods are sufficiently comparable, and will deny Defendants' motion on this issue.

In sum, the Court concludes there are unresolved issues concerning whether Plaintiffs are entitled to their "trade secret damages" and "lost profits" damages. Defendants' motion will be denied in this regard.

## IV. CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment [Doc. 320] is **GRANTED IN PART AND DENIED IN PART** as follows. Plaintiffs' Count XIII (Defendants Allen and Boyd's inducement of breach of contract), and Count XI (breach of the license agreement) are dismissed in their entirety. Plaintiffs' claims in Counts VI (declaratory judgment – trade secrets), VII (injunctive relief – trade secrets), and XVI (trade secret misappropriation and unfair competition – Omni Wool Tactical and Hiwassee Trading Company socks) are dismissed to the extent they relate to trade secret numbers 4, 5, 7-12, 15, 17-20, and 22 (the FITS trade secrets that are not alleged to be incorporated into Omni Wool Tactical socks or Hiwassee Trading Company sock at issue in this case). Plaintiffs' Count I (federal trademark infringement - Crescent), Count II (federal trademark infringement – individual defendants), Count V (violation of the Lanham Act), Count VIII (unfair or deceptive trade practices under Tenn. Code Ann. § 47-18-101, et seq.), Count X (unfair competition), and Count XVI (trade secret misappropriation and unfair competition – Omni Wool Tactical and Hiwassee Trading Company socks) are dismissed to the extent these claims concern FITS socks only, but not to the extent they concern Game Knits or Omni Wool Tactical/Hiwassee Trading Company socks. The Court reserves ruling on any trade secret misappropriation claim relating to the three socks knitted on a 108-needle machine and the one sock knitted on an 84-needle machine as addressed above and Plaintiffs should be prepared to address whether any of the eight trade secrets are incorporated into these four socks at the final pretrial conference. Defendants' motion for summary judgment is **DENIED** in all other respects as set forth herein.

Also for the reasons stated herein, Plaintiffs' motion for partial summary judgment [Doc. 322] is **DENIED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE